UNITED STATES BANKRUPTCY COURT
IN THE WESTERN DISTRICT OF MICHIGAN
(SOUTHERN DIVISION)

IN RE:  SHAUN PAUL GOBER,

Debtor,

_____/

GERALD SELBEE and MARGE SELBEE,

          Plaintiff,

-v-

SHAUN PAUL GOBER,

          Defendant.

_____/

File No.  21-00147-jwb

Chapter 7
Honorable James W. Boyd

Adversary Proceeding File No.

## COMPLAINT TO DETERMINE DISCHARGEABLITY OF INDEBTEDNESS

NOW COMES GERALD SELBEE and MARGE SELBEE, Creditors herein, by and through their attorney William G. Burdette, Esq. and for their Complaint states as follows:

### JURISDICTIONAL ALLEGATIONS

1. Plaintiff GEARLD SELBEE is an adult resident of the County of Osceola, State of Michigan.

2. Plaintiff MARGE SELBEE is an adult resident of the County of Osceola, State of Michigan.

3. Defendant is an adult resident of the County of Grand Traverse, State of Michigan.

4. Defendant has filed a petition for relief pursuant to Chapter 7 of the Bankruptcy Code.

5. This is a core proceeding pursuant to 28 USC 157(b)(2)(E), (H), and (I).

1

## FACTUAL ALLEGATIONS

6. Plaintiffs incorporate by reference their allegations contained in Paragraphs 1-5 of their Complaint as if fully restated herein.

7. GERALD SELBEE and MARGE SELBEE (hereinafter referred to as Plaintiffs") are husband and wife.

8. On or about June 5, 2020 to secure the amount of $36,500.00 loaned to EETKO Builders, LLC and Defendant, the parties executed a Promissory Note in the amount of $36,500.00. A copy of which is attached hereto as **Exhibit 1.**

9. The Promissory Note was secured by a Mortgage. A copy of which is attached hereto **as Exhibit 2**.

10. The Promissory Note was also secured by a Security Agreement (a copy of which is attached hereto as **Exhibit 3**) securing the amounts owed on the following equipment owed by the creditor and EETKO Builders, LLC:

> Kubota Tractor-L2501D-Serial No. 65727 and all accessories to Kubota Tractor
>
> Liberty Industries Trailer, VIN No. 5M4LC1823JF025033
>
> 2014 Bravo Trailer VIN NO. 542BC1624EB007340

11. On or about January 21, 2021, the Defendant filed Chapter 7 Bankruptcy and on that same date EETKO Builders, LLC filed Chapter 7 Bankruptcy as well.

12. After Defendant filed bankruptcy, Plaintiffs discovered that Defendant sold the Kubota Tractor-L2501D-Serial No. 65727 and all its accessories to a third party for an undisclosed amount.

13. After Defendant filed bankruptcy, Plaintiffs discovered that Defendant sold the Liberty Industries Trailer, VIN No. 5M4LC1823JF025033 trailer to a third party for an undisclosed amount.

14. After the sale, Defendant kept the proceeds notwithstanding that Plaintiffs had a security interest and did not pay Plaintiffs.

15. Defendant has admitted selling the property and not paying Plaintiffs at his deposition/examination in his bankruptcy case.

## COUNT I- FRAUD

16. Plaintiffs incorporate by reference their allegations contained in Paragraphs 1-15 of their Complaint as if fully restated herein.

17. Plaintiffs contend that by selling the Kubota Tractor and the Liberty Trailer out of trust and keeping the money for himself constitutes a fraud against Plaintiffs.

18. Plaintiffs have been damaged as a result of Defendant's fraud in an amount of the proceeds that he received as a result of the sale at issue.

WHEREFORE, Plaintiffs requests the Court:

(a) To declare Plaintiffs' allowed claim of the amount of the proceeds that Defendant received as a result of the sale of the Kubota tractor and the Liberty Trailer plus accrued interest, costs, and attorney's fees be deemed non-dischargeable; and

(b) To grant Plaintiffs any other relief that the Court deems just and proper.

THE LAW OFFICE OF WILLIAM G. BURDETTE, PC

Dated: 4/14/21

_____
William G. Burdette (P49174)
Attorney for Gerald and Marge Selbee
13709 SW Bayshore Drive
Traverse City, MI 49684
(231) 995-9100 Ext. 2

4

# NOTE

US $36,500.00                                                                                      Evart, Michigan

FOR VALUE RECEIVED, the undersigned EETCO BUILDERS, LLC & SHAUN P. GOBER, ("Borrower") promise(s) to pay to the order of GERALD SELBEE & MARGE SELBEE, HUSBAND & WIFE"); and the principal sum of Thirty-six Thousand Five Hundred and 00/100 ($36,500.00) Dollars, with interest on the unpaid principal balance from the date of this Note, until paid, at the rate of Five (5%) percent per annum. Principal and interest shall be payable at Note Holder's residence or such other place as the Note holder may designate, with monthly payments of $500.00, commencing September 1, 2020.

If any monthly installments under this Note are not paid when due and remain unpaid after a date specified by a notice to Borrower, the entire principal amount outstanding and accrued interest thereon shall at once become due and payable at the option of the Note holder. The date specified shall not be less than thirty days from the date such notice is mailed. The Note holder may exercise this option to accelerate during any default by Borrower regardless of any prior forbearance. If suit is brought to collect this Note, the Note holder shall be entitled to collect all reasonable costs and expenses of suit, including, but not limited to, reasonable attorney's fees.

Borrower shall pay to the Note holder a late charge of 25.00 if the monthly installment is not received by the Note holder within 10 days after the installment is due.

Borrower may prepay the principal amount outstanding in whole or in part. Any partial prepayment shall be applied against the principal amount outstanding and shall not postpone the due date of any subsequent monthly installments or change the amount of such installments, unless the Note holder shall otherwise agree in writing.

Presentment, notice of dishonor, and protest are hereby waived by all makers, sureties, guarantors and endorsers hereof. This Note shall be the joint and several obligation of all makers, sureties, guarantors and endorsers, and shall be binding upon them and their successors and assigns.

Any notice to Borrower provided for in this Note shall given by mailing such notice by certified mail addressed to Borrower at the Property Address stated below, or to such other address as Borrower may designate by notice to the Note holder. Any notice to the Note holder shall be sufficient if given by mailing such notice by certified mail, return receipt requested, to the Note holder at the address stated in the first paragraph of this Note, or at such other address as may have been designated by notice to Borrower.

Exhibit 1

This note is secured by a mortgage on real property located in Wexford Township, Wexford County, Michigan, described as follows:

Units 2, 12, 13 & 17, PHEASANT MANNOR, a Site Condominium, according to the Master Deed recorded in Liber 371, Page 651 together with rights in General Common Elements and Limited Common Elements as set forth in above Master Deed and as described in Act 59 of Public Acts of 1978, as amended.

and the following personal property, pursuant to a Security Agreement:

KUBOTA TRACTOR – L2501D - SERIAL # 65727

ALL ACCESSORIES TO KUBOTA TRACTOR

LIBERTY INDUSTRIES TRAILER
VIN # 5M4LC1823JF025033

2014 BRAVO TRAILER
VIN # 542BC1624EB007340

EETKO BUILDERS, LLC

Date: June 5, 2020

_____
SHAUN P. GOBER, SOLE MEMBER

Date: June 5, 2020

_____
SHAUN P. GOBER

# MORTGAGE

THIS INDENTURE, made this ___5___ day of June, 2020.

WITNESSETH that   EETKO BUILDERS, LLC & SHAUN P. GOBER
2122 Solace Dr.
Traverse City, MI  49696

hereinafter referred to as the Mortgagor, hereby mortgages and warrants to

GERALD SELBEE & MARGE SELBEE,
HUSBAND &   WIFE
Whose address is:  1216 High Street
P. O. Box 578
Evart, MI  49631

hereinafter referred to as Mortgagee, the following described lands and premises, viz:

Units 2, 12, 13 & 17, PHEASANT MANNOR, a Site Condominium, according to the Master Deed recorded in Liber 371, Page 651 together with rights in General Common Elements and Limited Common Elements as set forth in above Master Deed and as described in Act 59 of Public Acts of 1978, as amended.

together with all tenements, hereditaments and appurtenances now or hereafter thereunto belonging, to secure the repayment of

Thirty-six Thousand Five Hundred and 00/100 ($36,500.00) Dollars,

with interest at Five (5%) percent, per annum payable according to the terms of a promissory note dated this date; and the Mortgagor further covenants: To make all payments promptly and if any payment remains unpaid for 30 days after due, all unpaid hereon shall at the option of the Mortgagee become forthwith due:  That he will pay when due all taxes on the premises and keep all buildings on the premises adequately insured against loss or damage by fire and windstorm with usual loss payable to Mortgagee: That in case of default in paying taxes or insurance premiums, the Mortgagee may pay same and the sums so paid shall be added to the amount secured by this mortgage and shall be due forthwith;  that in case of default is made in any payment or covenant, the Mortgagee

Exhibit 2

is authorized to sell the premises at public auction, pursuant to the statute in such case made and provided and to make and deliver to the purchaser a good and sufficient deed, and out of the proceeds to retain all sums due hereon as well as the costs of such sale including the attorney fee provided by statute, rendering the surplus if any, to the Mortgagor; that in case of foreclosure, the abstract shall belong to the Mortgagee.

If more than one appears as Mortgagor or Mortgagee, or if either be of the feminine sex, or a corporation, the pronouns and relative words used herein shall be read as written in the plural, feminine or neuter respectively and all covenants shall bind and inure to the benefit of the heirs, personal representatives, assigns and successors of the respective parties;

IN WITNESS WHEREOF the Mortgagor has hereunto set his hand and seal.

Signed, Sealed and Delivered in the Presence of:

EETKO BUILDERS, LLC

BY: SHAUN P. GOBER, SOLE MEMBER

SHAUN P. GOBER

STATE OF MICHIGAN   )
COUNTY OF GRAND TRAVERSE ) SS.

On this 5th day of June, 2020, before me, a Notary Public in and for said County, personally appeared SHAUN P. GOBER, SOLE MEMBER OF EETKO BUILDERS, LLC & SHAUN P. GOBER, to me known to be the same person(s) described in and who executed the within instrument, who acknowledged the same to be their free act and deed.

My Commission Expires: _____

_____, Notary Public,
_____ County, Michigan
Acting in _____SABRINA K. DUSSEAU_____ County

NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF GRAND TRAVERSE
My Commission Expires 08-26-2026
Acting in the County of Grand Traverse

Drafted by: James R. White
P.O. Box 973
Evart, Michigan 49631

## SECURITY AGREEMENT

This Security Agreement (together with all amendments, supplements, and other modifications; "Agreement") is executed in Evart, Michigan, on *June 5*, 2020, by EETKO BUILDERS, LLC & SHAUN P. GOBER, (together with its permitted successors and assigns, heirs, and personal representatives; "Grantor") whose mailing address is 2122 Solace Dr., Traverse City, MI 49696 and GERALD SELBEE & MARGE SELBEE, HUSBAND & WIFE ("Secured Party"), whose mailing address is P. O. Box 578, Evart, MI 49631.

1. *Grant of Interest.* Grantor grants to Secured Party a security interest in all of Grantor's right, title, and interest in the following property of Grantor (excluding Consumer Goods) wherever located and whether now existing or later acquired or created (collectively, the "Collateral"), including, without limitation:

   **SEE ATTACHED "EXHIBIT A"**

   This Collateral secures the full and prompt performance and payment to Secured Party of all obligations of Grantor to Secured Party, whether incurred directly or acquired by purchase, pledge, or otherwise, and whether participated in in whole or in part, including, without limitation, (i) every such obligation to Secured Party, whether in a joint, several, or joint and several capacity, whether now owing or existing or later arising or created, owed absolutely, or contingently, created by loan, overdraft, guaranty, or other contract, quasi-contract, tort, statute, or otherwise, whether for principal, interest, fees, expenses, or otherwise and (ii) any and all obligations of Grantor to Secured Party or to any affiliate of Secured Party, whether now owing or existing or later arising or created, owed absolutely or contingently, whether evidenced or acquired (including all renewals, extensions, and modifications thereof or substitutions) (collectively the "Subject Debt").

2. *Representations and Warranties.* Grantor represents and warrants to Secured Party as follows:

   a. *Existence.* Grantor's legal name is exactly as set forth in the first paragraph of this Agreement. Grantors are an individual & a Michigan Limited Liability Company with a principal address located at 2122 Solace Dr., Traverse City, MI 49696.

   b. *Location.* All Goods in which Grantor has any rights are kept at

   c. *Ownership.* Grantor owns all of the presently existing Collateral, pursuant to a Purchase Agreement, of even date, with the Secured Party.

   d. *Authority; No Consent.* Grantor has all right, power, and authority to enter into and deliver this Agreement and grant to Secured Party the Encumbrances on the Collateral. This Agreement is a valid obligation of Grantor, enforceable in accordance with its terms. No consent, authorization, approval, or other action of any third party is required for the grant by Grantor of the Encumbrances under this Agreement.

Exhibit 3

3. ***Covenants.***

   a. ***No Transfer or Encumbrance.*** Grantor agrees that it will not, without in each case obtaining Secured Party's prior written consent, *(i)* sell, lease, transfer, or otherwise dispose of all or any part of the Collateral or license any of the Collateral except as otherwise permitted in this Agreement, or *(ii)* grant any Encumbrances in or permit any Collateral to be or become subject to any Encumbrance except for Permitted Encumbrances. Grantor shall comply with all applicable laws, rules, and regulations related to the Collateral. Grantor agrees to join Secured Party to take all steps necessary to preserve, protect, and defend Secured Party's security interest in the Collateral, at Grantor's expense, as Secured Party may from time to time require.

   b. ***Insurance.*** Grantor will keep the Collateral consisting of Inventory, Equipment, Goods, and Fixtures insured with such insurers, in such amounts and against all risks to which they may be exposed, as each shall be reasonably acceptable to Secured Party. These policies shall name Secured Party as an additional insured and shall contain satisfactory loss payable clauses in favor of Secured Party and contain insurer's agreement that any loss thereunder shall be payable to Secured Party, notwithstanding any action, inaction, or breach of representation or warranty by Grantor. Annually and on Secured Party's request, Grantor will deliver to Secured Party certificates evidencing such policies and, on request, include copies of such policies. Grantor assigns to Secured Party any returned or unearned premium due on cancellation of any such insurance and directs any insurer to pay to Secured Party all amounts so due. Each policy for liability insurance shall provide for all losses to be paid on behalf of Grantor and Secured Party as their interests may appear, and each policy for property damage shall provide for losses to be paid to Secured Party. All amounts received by Secured Party in payment of insurance losses or returned or unearned premiums may, at Secured Party's option, be applied either to the Subject Debt (with such allocation as to item and maturity as Secured Party may deem advisable) or to the repair, replacement, or restoration of the Collateral or a combination thereof.

   c. ***Inspection.*** Grantor will at all times keep accurate and complete records of the Collateral. Secured Party and its agents shall have the right at all reasonable times to examine and inspect the Collateral and to make extracts from the books and records related to the Collateral, and to examine, appraise, and protect the Collateral.

   d. ***Preservation of Collateral; Risk of Loss.*** The Collateral shall remain personal property at all times and shall not be affixed. Grantor will maintain the Collateral in good condition and repair, except for ordinary wear and tear. Grantor will pay promptly all taxes, levies, and all costs of repair, maintenance, and preservation. Grantor bears the risk of loss of the Collateral.

   e. ***Merger; Consolidation.*** Grantor will preserve its existence and will not, in one transaction or in a series of related transactions, merge into or consolidate with any other entity.

   f.   *Notice.* Grantor agrees to give Secured Party:

   i.   not less than thirty (30) days' prior written notice of any change in Grantor's name, in the location of its chief executive office or personal residence, or any other information provided under subsection 2(a) of this Agreement or of any other change in circumstances that affects or may affect the continuing efficacy of any financing statement filed by Grantor and Secured Party, or the continuing status of Secured Party's security interest as the first and prior lien on the Collateral.

   ii.  immediate written notice if any third party claims any Encumbrance on any of the Collateral or claims that Grantor's use thereof infringes or unlawfully conflicts with any rights of such party, and

   iii. from time to time, on Secured Party's request, statements and schedules further identifying and describing the Collateral, in form and substance satisfactory to Secured Party.

   g.   *Further Assurances.* Grantor agrees to execute and deliver from time to time on request of Secured Party such other instruments of assignment, conveyance, and transfer, and take such other action as Secured Party may reasonably request for the purpose of perfecting, continuing, amending, protecting, or further evidencing the arrangements contemplated or to enable Secured Party to exercise and enforce its rights and remedies under this Agreement. At Grantor's expense Grantor will on each request of Secured Party *(i)* file and authorize Secured Party to file, from time to time, financing statements or other Records in such public offices as Secured Party may require, containing, among other things, *(A)* a collateral description of "all personal property and assets" of Grantor or such other description of the Collateral as Secured Party may require, whether expanded or reduced, *(B)* an indication of any Agricultural Liens or other statutory liens held by Secured Party, and *(C)* Grantor's federal taxpayer identification number, social security number, and/or state organizational number, if any, and any other identifying information that Secured Party may require, *(ii)* place a legend on all Chattel Paper indicating that Secured Party has a security interest in such Chattel Paper, *(iii)* where the Collateral is in the possession of a third party, join with Secured Party in notifying the third party of Secured Party's security interest and obtaining an acknowledgment from the third party that it is holding the Collateral for the benefit of Secured Party, *(iv)* if the Collateral is an Instrument or Chattel Paper, deliver such Collateral to Secured Party, and *(v)* comply with every other requirement deemed necessary by Secured Party for the perfection of its security interest in the Collateral. Without diminishing or impairing any of Grantor's obligations under this Agreement, a photographic, electronic, or other reproduction of this Agreement shall be sufficient as a financing statement.

4. *Provisions Applicable to Motor Vehicles.* If any part of the Collateral shall be a motor vehicle for which a certificate of title may or must be issued, Grantor shall deliver to Secured Party (together with any other documentation requested by Secured Party), promptly after such certificate of title is issued to Grantor, the certificate of title together with such other documentation requested by Secured Party appropriately executed by

Grantor so that Secured Party may cause its Encumbrance to be noted on the certificate of title by the appropriate authorities.

5. *Additional Authorizations.* Secured Party is appointed Grantor's attorney-in-fact to make adjustments of all insurance losses, to sign all applications, receipts, releases, and other papers necessary for the collection of any such loss and any return or unearned premium, to execute proofs of loss, to make settlements, to endorse and collect any check or other item payable to Grantor issued in connection therewith, and to apply the same to the Subject Debt.

6. *Remedies.* If any Event of Default occurs or after demand is made by Secured Party, Secured Party has the right, at its option at any time and from time to time, without notice to Grantor to exercise the following rights and remedies, which may be exercised simultaneously:

   a. Secured Party shall have full power and right to exercise any and all rights and remedies available at law (including, without limitation, those afforded by the UCC) or in equity to collect, enforce, or satisfy any of the Subject Debt and exercise any or all of the rights and remedies with respect to the Collateral, including, without limitation, those provided in this Agreement or in any Related Writing.

   b. Secured Party may enter any premises where the Collateral is located and take possession of the Collateral or remove the Collateral from such premises. On Secured Party's demand, Grantor will assemble and make the Collateral available to Secured Party at such place or places as Secured Party may reasonably require, all at Grantor's expense.

   c. Secured Party may attach, execute, or levy on any of the Collateral.

   d. With respect to the certificated securities, Secured Party may register or transfer into its own name, or into the name of its nominee, all or any part of the Collateral.

   e. Secured Party may retain, take control of, or manage all or any part of the Collateral.

   f. Secured Party shall have the right to sell, transfer, or otherwise dispose of all or any of the Collateral at any time or from time to time. Secured Party shall give Grantor commercially reasonable prior notice of either the date after which any intended private sale is to be made or the time and place of any intended public sale, provided that Secured Party need give no such notice in the case of Collateral that Secured Party determines to be declining speedily in value or that is customarily sold on a recognized market. Grantor waives advertisement of any such sale and (except only to the extent notice is specifically required by the preceding sentence) waives notice of any kind with respect to such sale. Secured Party shall have the right to conduct such sales on Grantor's premises, without charge therefor, and such sales may be adjourned from time to time in accordance with applicable law without further requirement of notice to Grantor. At any

public sale Secured Party may purchase the Collateral or any part thereof free from any right of redemption, which right Grantor waives. After deducting all expenses and attorney fees incurred in assembling, taking, repairing, storing, and selling and delivering the Collateral or any part thereof, Secured Party may apply the net proceeds of the sale to the Subject Debt with such allocation as to item and maturity as Secured Party in its sole discretion deems advisable, and shall refund the surplus, if any, to Grantor, who shall be liable for any deficiency. Secured Party may sell or otherwise dispose of the Collateral without giving any warranties as to the Collateral and may specifically disclaim any warranties of title or the like, any or all of which will not be considered adversely to affect the commercial reasonableness of any sale or other disposition of the Collateral. Grantor permits Secured Party to disclaim all representations and warranties provided under the UCC in any foreclosure sale contracts.

7. *Indemnity; Fees and Expenses.* Grantor agrees to indemnify Secured Party from and against any and all claims, losses, and liabilities, except claims, losses, or liabilities resulting from Secured Party's gross negligence or willful misconduct. Grantor will reimburse Secured Party, on demand, for any and all fees, costs, and expenses (including, without limitation, reasonable attorney fees) incurred by Secured Party in *(a)* administration of this Agreement, *(b)* custody, preservation, sale, use, collection, or realization of the Collateral, *(c)* protection or enforcement of its rights in the Collateral or under this Agreement or *(d)* failure of Grantor to perform or observe any provisions of this Agreement.

8. *Secured Party May Perform.* If Grantor fails to perform any agreement contained herein, Secured Party may itself perform (but is not required to perform) or cause performance of, such agreement, and the expenses of Secured Party incurred in connection therewith shall be payable by Grantor on Secured Party's demand. If Grantor does not reimburse Secured Party, such amounts paid will become part of the Subject Debt and will be secured under this Agreement. The powers conferred on Secured Party under this Agreement are solely to protect its interest in the Collateral and shall not impose any duty on it to exercise any such powers.

9. *Notices.* Each notice to Grantor shall be in writing and shall be deemed to have been given or made when sent to Grantor, by certified mail, return receipt requested, or nationally recognized overnight courier service to the address of Grantor set forth above or at such other address that Grantor may furnish to Secured Party from time to time. Every notice to Secured Party shall be effective when delivered to Secured Party at its banking office or at such other address as Secured Party may furnish to Grantor. Grantor assumes all risks arising out of or in connection with each notice given under this Agreement.

10. *Definitions.* As used in this Agreement, the following terms shall have the following meanings: *(a) Event of Default* means any event of default as defined and occurring under any Related Writing; *(b) Record* means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form; *(c) Related Writing* means a Record of any kind that *(i)* evidences the Subject Debt or pursuant to which any Subject Debt is issued, *(ii)* evidences any Collateral or any interest therein or Proceeds or Products thereof or that otherwise relates

thereto in any manner and includes, without limitation, any warehouse receipt, bill of lading, certificate, affidavit, assignment, endorsement, trust receipt, contract of sale, lease, invoice, or check, or *(iii)* is a financial statement, audit report, opinion, notice, certificate, or other Record of any kind that is furnished to Secured Party by Grantor or by any officer, partner, employee, agent, auditor or counsel of Grantor; and *(d) UCC* means the Uniform Commercial Code as currently in effect in the jurisdiction where the chief executive office of the Secured Party is located and as the Uniform Commercial Code may later be amended, adopted, and effective in such jurisdiction. All terms used in this Agreement that are defined under the UCC and not otherwise defined in this Agreement, including, without limitation, all terms relating to the Collateral, shall have the meaning as set forth in the UCC.

11. *General Provisions.* The provisions of this Agreement shall be binding on the successors, assigns, heirs, and personal representatives of the parties. No single or partial exercise of any right, power or privilege shall preclude any further or other exercise thereof or of any other right, power, or privilege, as each such right, power, or privilege may be exercised either independently or concurrently with others and as often and in such order as Secured Party may deem expedient. This Agreement contains the entire security agreement between Grantor and Secured Party and may be in addition to other security agreements executed by Grantor in favor of Secured Party. If any one or more of the provisions of this Agreement should be invalid, illegal, or unenforceable in any respect, the finding shall only affect the provisions found to be void and the remaining provisions shall not be impaired. No course of dealing with respect to, nor any omission or delay in the exercise of, any right, power, or privilege by Secured Party under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any further or other exercise thereof or of any other right, power, or privilege, as each such right, power, or privilege may be exercised either independently or concurrently with others and in such order as Secured Party may deem expedient. The provisions of this Agreement may be modified, altered, or amended only by written agreement signed by Secured Party and Grantor. Each right, power, or privilege is in addition to and not in limitation of any other rights, powers, and privileges that Secured Party may otherwise have or acquire by operation of law (including, without limitation, the right of offset), by other contract or otherwise. This Agreement shall be governed by the law (excluding conflict of laws rules) of the jurisdiction in which Secured Party's banking office is located.

12. *Defeasance.* Secured Party's security interest in the Collateral shall remain in effect in accordance with this Agreement until the Subject Debt has been fully satisfied and shall not be affected by the lapse of time or by the fact that there may be a time or times when no Subject Debt is outstanding. If and when Secured Party's security interest shall have terminated in accordance with the provisions of this Agreement, Grantor agrees to pay to Secured Party, on demand, an amount equal to all reasonable costs and expenses incurred by Secured Party in terminating its security interests or in notifying Account Debtors of any such termination.

13. *Jurisdiction and Venue; Waiver of Jury Trial.* Any action, claim, counterclaim, cross-claim, proceeding, or suit arising under or in connection with this Agreement (each an "Action") may be brought in the appropriate state court located in Osceola County, Michigan. Grantor unconditionally submits to the jurisdiction of any such court with

no Subject Debt is outstanding. If and when Secured Party's security interest shall have terminated in accordance with the provisions of this Agreement, Grantor agrees to pay to Secured Party, on demand, an amount equal to all reasonable costs and expenses incurred by Secured Party in terminating its security interests or in notifying Account Debtors of any such termination.

13. ***Jurisdiction and Venue; Waiver of Jury Trial.*** Any action, claim, counterclaim, cross-claim, proceeding, or suit arising under or in connection with this Agreement (each an "Action") may be brought in the appropriate state court located in Osceola County, Michigan. Grantor unconditionally submits to the jurisdiction of any such court with respect to each such Action and waives any objection Grantor may now or later have to the venue of any such Action brought in any such court. GRANTOR AND EACH HOLDER OF THE SUBJECT DEBT OR ANY PART THEREOF KNOWINGLY AND VOLUNTARILY WAIVES JURY TRIAL WITH RESPECT TO ANY ACTION, CLAIM, COUNTERCLAIM, CROSS-CLAIM, PROCEEDING, OR SUIT, WHETHER AT LAW OR IN EQUITY, WHETHER SOUNDING IN TORT, CONTRACT, OR OTHERWISE AT ANY TIME ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OTHER RELATED WRITING, THE ADMINISTRATION, ENFORCEMENT, OR NEGOTIATION OF THIS AGREEMENT OR ANY OTHER RELATED WRITING, OR THE PERFORMANCE OF ANY OBLIGATION WITH RESPECT TO THIS AGREEMENT OR ANY OTHER RELATED WRITING.

This Agreement is executed on the date listed on the first page of this Agreement, with the parties intending to be legally bound by it.

Grantor:

EETKO BUILDERS, LLC

BY: SHAUN P. GOBER
Sole Member

_____
SHAUN R. GOBER

Secured Party:

_____
GERALD SELBEE

_____
MARGE SELBEE

STATE OF MICHIGAN    )
                     ) SS.
COUNTY OF Grand Traverse )

On this 5th day of June, 2020, before me, a Notary Public in and for said County, personally appeared SHAUN P. GOBER, SOLE MEMBER OF EETKO BUILDERS, LLC & SHAUN P. GOBER, to me known to be the same person(s) described in and who executed the within instrument, who acknowledged the same to be their free act and deed.

My Commission Expires:  _S__ K__ D_____

_____                                   , Notary Public,
SABRINA K. DUSSEAU                          _____ County, Michigan
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF GRAND TRAVERSE            Acting in _____ County
My Commission Expires 08-26-2026
Acting in the County of Grand Traverse


STATE OF MICHIGAN    )
                     ) SS.
COUNTY OF            )

On this       day of June, 2020, before me, a Notary Public in and for said County, personally appeared GERALD SELBEE AND MARGE SELBEE, HUSBAND & WIFE, to me known to be the same person(s) described in and who executed the within instrument, who acknowledged the same to be their free act and deed.

My Commission Expires:

respect to each such Action and waives any objection Grantor may now or later have to the venue of any such Action brought in any such court. GRANTOR AND EACH HOLDER OF THE SUBJECT DEBT OR ANY PART THEREOF KNOWINGLY AND VOLUNTARILY WAIVES JURY TRIAL WITH RESPECT TO ANY ACTION, CLAIM, COUNTERCLAIM, CROSS-CLAIM, PROCEEDING, OR SUIT, WHETHER AT LAW OR IN EQUITY, WHETHER SOUNDING IN TORT, CONTRACT, OR OTHERWISE AT ANY TIME ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OTHER RELATED WRITING, THE ADMINISTRATION, ENFORCEMENT, OR NEGOTIATION OF THIS AGREEMENT OR ANY OTHER RELATED WRITING, OR THE PERFORMANCE OF ANY OBLIGATION WITH RESPECT TO THIS AGREEMENT OR ANY OTHER RELATED WRITING.

This Agreement is executed on the date listed on the first page of this Agreement, with the parties intending to be legally bound by it.

Grantor:

EETKO BUILDERS, LLC

_____
BY: SHAUN P. GOBER
Sole Member

_____
SHAUN P. GOBER

Secured Party:

_____
GERALD SELBEE

_____
MARGE SELBEE

STATE OF MICHIGAN   )
                    ) SS.
COUNTY OF OSCEOLA   )

On this  5  day of June, 2020, before me, a Notary Public in and for said County, personally appeared GERALD SELBEE AND MARGE SELBEE, HUSBAND & WIFE, to me known to be the same person(s) described in and who executed the within instrument, who acknowledged the same to be their free act and deed.

My Commission Expires:

10-28-2025

JAMES R. WHITE, Notary Public,
Osceola County, Michigan
Acting in Osceola County

## SCHEDULE A

KUBOTA TRACTOR – L2501D -
SERIAL # 65727

ALL ACCESSORIES TO KUBOTA
TRACTOR

LIBERTY INDUSTRIES TRAILER
VIN # 5M4LC1823JF025033

2014 BRAVO TRAILER
VIN # 542BC1624EB007340